**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH HEALEY, TOM O'DRISCOLL, ALAN PORTER, JAMES B. HOWLAND, KARL DIEDE, JIM TIMOTHY, and JOHN RYAN , on behalf of themselves and all others similarly situated,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 11 C 8892** |
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 134, FREEMAN ELECTRICAL, INC., GLOBAL EXPERIENCE SPECIALISTS, INC., and METROPOLITAN PIER AND EXPOSITION AUTHORITY,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Joseph Healey, Tom O'Driscoll, Alan Porter, James B. Howland, Karl

Diede, Jim Timothy, and John Ryan have sued International Brotherhood of Electrical

Workers, Local Union No. 134 (the union), Freeman Electrical, Inc., Global Experience

Specialists, Inc. (GES), and the Metropolitan Pier and Exposition Authority (MPEA).

They assert claims for breach of the union's duty of fair representation, breach of the

union's collective bargaining agreement (CBA) with electrical contractors, and tortious

interference with the CBA. Plaintiffs also seek declaratory judgments that various

contracts are illegal under Illinois statute. Plaintiffs seek to represent a class of similarly

situated individuals. Defendants have moved to dismiss plaintiffs' second amended

complaint. For the reasons stated below, the Court grants defendants' motions in part and denies them in part.

## Background

The Court accepts the allegations in plaintiff's complaint as true for purposes of resolving the motions to dismiss. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

The MPEA, GES, and Freeman are all parties to a CBA that the union has with the Electrical Contractors' Association of City of Chicago. The CBA provides a process by which electricians are referred to contractors for hire. Under the CBA, the union is the sole source of referrals to contractors. In the referral system, electricians are placed into four groups based on their experience and skills, and within each group electricians receive priority for referrals based upon when they signed up as available to work. Generally, the union keeps two different call lists of available positions, one for positions that will last less than ten days and one for positions that will last at least ten days.

The MPEA is a local government entity that owns and operates McCormick Place and Navy Pier in Chicago. The union assigns electricians to the MPEA to work at McCormick Place, a convention center, using a list different from the two described above. Plaintiffs allege that the list that is used to refer employees to McCormick Place is supposed to be for short-term assignments, but that some of the employees referred to work at McCormick Place for short terms are later converted into long-term workers at McCormick Place. Plaintiffs contend that there are no particular standards to determine which electricians get long-term work at McCormick Place and that in practice, the long-term positions go to electricians who have personal and political

2

connections to influential people in Chicago.  According to plaintiffs, no other contractor who uses union electricians is allowed to act like the MPEA and decide arbitrarily to make some short-term workers long-term.

Beginning in 2009, the sponsors of a number of conventions that previously had been held at McCormick Place announced that they were relocating or considering relocating to other cities.  The convention sponsors expressed concerns about high costs and union labor rules.  In response, the Illinois legislature amended the Metropolitan Pier and Exposition Authority Act (MPEA Act) in 2010.  The amended MPEA Act provided that a convention had the right to choose an electrical contractor approved by the MPEA and stated that the MPEA "shall not serve as the exclusive provider of electrical services."  70 ILCS 210/5.4(c)(15) & (f)(2).

After the amendments to the MPEA Act, the MPEA began to allow GES and Freeman to provide electrical services at McCormick Place.  The union referred plaintiffs, who are electricians and members of the union, to GES and Freeman via the normal referral process.  Plaintiffs then worked at McCormick Place for these entities on a long-term basis.

In 2011, the union entered into agreements with Freeman and GES that purported to be side letters interpreting the CBA.  In these letters, Freeman and GES agreed to get all the workers they used at McCormick Place through the MPEA.  As a consequence, Freeman and GES would no longer use the normal CBA-based referral process to hire electricians.  Freeman and GES then entered into McCormick Place Utility Service Agreements with the MPEA.  In these contracts, the MPEA arranged a way that it would refer its electricians to Freeman and GES.  Plaintiffs allege that the

3

MPEA entered into these contracts intending to stop GES and Freeman from using the referral process created by the CBA. Plaintiffs also assert that these contracts violate the MPEA Act, because the MPEA is now providing all of the electricians used at McCormick Place and so is the de facto exclusive provider of electrical services at McCormick Place.

On August 15, 2011, Freeman and GES laid off all of their employees who were members of the union, including plaintiffs. Plaintiffs allege that since that time, GES and Freeman have only used electricians on loan from the MPEA.

**Discussion**

A plaintiff "has stated a claim only if it has alleged enough facts to render the claim facially plausible, not just conceivable." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). "When analyzing the sufficiency of a complaint, [the Court] construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in the nonmoving party's favor." *Id.*

In their second amended complaint, plaintiffs assert claims for breach of the duty of fair representation against the union, breach of the CBA against Freeman and GES, and tortious interference with the CBA against the MPEA. Plaintiffs also seek declaratory judgments that the side letters and utility service agreements entered into by the defendants are invalid because they are illegal under the MPEA Act.

Defendants contend that all claims except those related to breach of the union's duty of fair representation should be dismissed. Freeman and GES contend that plaintiffs have not sufficiently alleged a breach of the CBA and that they have not sufficiently alleged the required exhaustion of contractual remedies and breach of the

4

duty of fair representation. The MPEA joins these arguments as they relate to the tortious interference claim and also contends that the claim is preempted by the Labor Management Relations Act (LMRA). All defendants contend that the Court lacks jurisdiction to consider the declaratory judgment claims, and the union and the MPEA contend that plaintiffs have not sufficiently pleaded the declaratory judgment claims.

## A.    Breach of the CBA

GES and Freeman contend that plaintiffs have not sufficiently alleged that they violated the CBA. The MPEA also makes this argument, because breach of the underlying contract is an element of the tortious interference with contract claim that plaintiffs assert. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154–55, 545 N.E.2d 672, 676 (1989). The defendants contend that although the CBA details the referral process, that process binds only the union, and the only duties imposed upon employers under the referral process are that the union must "be the sole and exclusive source of referral of applicants for employment." Pl. Ex. A § 4.02. Defendants implicitly contend that the separate referral process by which the MPEA receives electricians from the union satisfies this requirement for the union to be the only source of referrals.

As plaintiffs note in their response, however, the CBA states that "[t]he loaning and borrowing of journeymen [electricians] between contractors shall not be tolerated." *Id.* § 2.18. Plaintiffs have alleged that GES and Freeman agreed to obtain electricians for work at McCormick Place by borrowing them from the MPEA. 2d Am. Compl. ¶¶ 51, 55, 59. Accordingly, plaintiffs have alleged that GES and Freeman violated this provision of the CBA, which plainly does not permit borrowing electricians from other

contractors.

Defendants do not contend that the allegations in the complaint in combination with section 2.18 of the CBA are insufficient. Instead, they contend that plaintiffs, by not specifically citing section 2.18 until their response, impermissibly attempted to amend their complaint via their response. The complaint references the CBA many times, however, and the contents of the CBA are undoubtedly critical to a claim that GES and Freeman violated the CBA. Accordingly, the Court may consider the CBA in resolving defendants' motions to dismiss even though it was not attached to the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). In fact, GES, Freeman, and the MPEA all cited particular provisions of the CBA in making arguments in their initial briefs. Defendants can hardly claim that they were unfairly surprised by a new reference to the CBA in plaintiffs' response when they were able to reference the CBA themselves for provisions that supported their positions.

Defendants argue that in a previous case the Court stated "[a] plaintiff may not . . . amend her complaint via a response to a motion to dismiss," and refused to consider additional facts proffered by the plaintiff in the response. *Mason v. SEIU Healthcare*, 10 C 6527, 2011 U.S. Dist. LEXIS 45687, at *3 (N.D. Ill. Apr. 28, 2011). In that case, however, the *pro se* plaintiff's complaint gave nothing more than a bottom-line conclusion. And the order defendants cite expressly gave the plaintiff leave to amend to include her new allegations. More to the point, the Seventh Circuit has more recently stated that "[a] plaintiff . . . has much more flexibility in opposing a Rule 12(b)(6) motion and in appealing a dismissal" and that a plaintiff may, in responding to a motion to dismiss, "elaborate on his factual allegations so long as the new elaborations are

consistent with the pleadings." *Geinosky*, 675 F.3d at 745 n.1. In their complaint, plaintiffs alleged that GES and Freeman had violated the CBA by borrowing electricians from the MPEA. In their response to the motion to dismiss, plaintiffs cited a particular provision of the CBA that forbids the loaning of electricians. Their elaboration is entirely consistent with the complaint.

## B.    Breach of the duty of fair representation and exhaustion

Plaintiffs have sued both their union for breach of the duty of fair representation and their employers for breach of the CBA under section 301 of the LMRA. 29 U.S.C. § 185. This type of claim "is referred to as a hybrid suit because it is comprised of two causes of action that are inextricably interdependent." *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 613 (7th Cir. 2001) (internal quotation marks omitted). "In a hybrid 301 suit, the employee's claim against the union and his claim against the employer are interlocked: neither claim is viable if the other fails." *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997) (internal quotation marks omitted). GES, Freeman, and the MPEA, although not the union, contend that plaintiffs have not sufficiently alleged a breach of the duty of fair representation and so plaintiffs' claims that Freeman and the MPEA breached the CBA and that the MPEA tortiously interfered with the CBA must be dismissed.

"A union breaches its duty to fairly represent its members where its conduct toward one of its members is arbitrary, discriminatory, or in bad faith." *McLeod*, 258 F.3d at 613. Whether a union's conduct is arbitrary is an objective inquiry, asking if "the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Id.* at 613 (internal quotation marks omitted). By contrast, when a plaintiff claims the

union's actions were discriminatory or in bad faith, the inquiry involves the union's subjective motives.  *Crider*, 130 F.3d at 1243.

In their complaint, plaintiffs allege that the electricians working long-term for the MPEA received their positions via an irregular process that was influenced by politics, favoritism, and connections.  2d Am. Compl. ¶¶ 36, 38–39.  They also allege that the union entered into side letters with Freeman and GES requiring the contractors to obtain all of their electricians for McCormick Place from the MPEA.  *Id.* ¶¶ 50–51.  These side letters, despite purporting to interpret the CBA, arguably conflict with express provisions of the CBA forbidding borrowing of workers between contractors.  Pl. Ex. A § 2.18.  The union did not tell plaintiffs about these side letters, even though plaintiffs were union members whose current positions at Freeman and GES would be endangered or eliminated by the side letters.  2d Am. Compl. ¶¶ 50–51.  According to plaintiffs, the side letters had the effect of providing more work for a privileged group of connected union members, at the expense of the jobs of disfavored union members like plaintiffs.  The union thus allegedly discriminated against some of its members to benefit others, in a way that was contrary to the CBA's normal referral rules.  The union's actions also effectively made MPEA-employed electricians the only providers of electrical services at McCormick Place, allegedly in violation of the MPEA Act.

Accepting plaintiffs' allegations as true, the union, without informing affected employees, entered into side agreements with contractors that violated the CBA and state law, benefitted some connected union employees, and cost others their jobs. Plaintiffs have adequately alleged that the union's actions were discriminatory, in bad faith, and objectively irrational so as to be arbitrary.  They have accordingly sufficiently

alleged a breach of the duty of fair representation.

GES, Freeman, and the MPEA also claim that plaintiffs failed to exhaust their contractual remedies before bringing suit. "Generally, an employee must exhaust the CBA's grievance procedures before pursuing judicial remedies." *McLeod*, 258 F.3d at 616. One exception to this exhaustion requirement, however, is if "the union breached its duty of fair representation." *Id.* The plaintiffs have adequately alleged a breach of the union's duty of fair representation. Thus any failure to exhaust the remedies provided by the CBA is excused.

In sum, the Court declines to dismiss plaintiffs' claim against GES and Freeman for breach of the CBA.

## C.    Preemption

The MPEA contends that plaintiffs' claim that it tortiously interfered with the CBA is preempted by section 301 of the LMRA. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987). The statute preempts any state law claims premised on or requiring interpretation of a CBA. *Id.*; *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 727 (7th Cir. 2000). As noted above, plaintiffs' tortious interference claim requires plaintiffs to demonstrate that their employers breached the CBA. *HPI Health Care Servs.*, 131 Ill. 2d at 154–55, 545 N.E.2d at 676. To decide whether GES and Freeman violated the CBA requires interpreting it. Accordingly, plaintiffs' tortious interference claim against the MPEA is preempted. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Borden, Inc.*, 736 F. Supp. 788, 791–92 (N.D. Ill. 1990).

9

Plaintiffs suggest that the reasons for preemption under section 301 are primarily to allow federal courts to create uniform law regarding CBAs, prevent plaintiffs from recharacterizing their claims to avoid litigating their rights under the CBA, and allow CBAs that require arbitration to follow that process. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Kimbro*, 215 F.3d at 725–26. Plaintiffs contend that none of these concerns exist in this case, because the Court already will be required to interpret the CBA in connection with the breach of duty of fair representation and breach of CBA claims. Plaintiffs also contend that they are not attempting to recharacterize their suit to avoid federal law. The latter contention is somewhat dubious, because in their initial and first amended complaints, plaintiffs asserted a claim against the MPEA for violation of the CBA under section 301. The MPEA cannot be sued under section 301, however, because states and their political subdivisions are excluded from the statute's definition of an employer. *See* 29 U.S.C. §§ 152, 185. In their second amended complaint, however, plaintiffs abandoned their claim against the MPEA under section 301 and instead brought the tortious interference claim. This suggests that plaintiffs in fact may be trying to avoid Congress's determination that local governments may not be sued under the LMRA.

Regardless, the Seventh Circuit has clearly held that a plaintiff's tortious interference claim against a non-party to a CBA is preempted by section 301, even if preemption leaves the plaintiff with no remedy. *Kimbro*, 215 F.3d at 727. Whether or not dismissal in this particular case advances the policies behind LMRA preemption, the Court is bound to follow the Seventh Circuit's determination. Plaintiffs' tortious interference claim against the MPEA is preempted by the LMRA.

10

Plaintiffs contend that if their state law tortious interference claim is preempted, the Court should find that there is a federal tortious interference claim under section 301. They contend that otherwise they will be left with no remedy against the MPEA. The Seventh Circuit has held, however, that the federal courts cannot create tort remedies under section 301. *Kimbro*, 215 F.3d at 727 ("section 301 creates a right of action only for breach of a collective bargaining agreement, it is not a tort statute" (emphasis omitted)); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1180 (7th Cir. 1993) (although federal courts create a common law under section 301, it is a "common law of contracts, not a source of independent rights, let alone tort rights"). In both *Kimbro* and *Brazinski*, the court recognized that a refusal to create a tort remedy might leave plaintiffs without a remedy, but that fact did not alter its decision. *Id.* In the cases, the Seventh Circuit noted, without deciding, that a potential solution would be to allow the state law claim to proceed but use the contractually provided arbitration process for any interpretation of the CBA necessary to resolve that claim. *Kimbro*, 215 F.3d at 726–27; *Brazinski*, 6 F.3d 1179–81. Despite the Seventh Circuit's suggestion, plaintiffs do not contend that they could use arbitration to avoid preemption of their claim.

Plaintiffs cite *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847 (2010), in which the Court left open the question of whether federal courts could allow an action under section 301 for interference with a CBA. *Id.* at 2863–66. In that case, however, the Court noted that "virtually all Courts of Appeals" had held that federal courts could not create tort claims under section 301 and stated that it "saw no reason for a different result here." *Id.* at 2864 (citing *Brazinski*, 6 F.3d at 1180). Nothing about the Supreme

11

Court's decision contradicts or overturns the Seventh Circuit's holdings that a court cannot create tort rights under section 301.  Again, the Seventh Circuit's decisions are binding on this Court

For these reasons, the Court dismisses plaintiffs' tortious interference claim against the MPEA.

**D.     Jurisdiction over declaratory judgment claims**

Plaintiffs seek declaratory judgments that the side letters agreements made by the union, GES, and Freeman and the utility service agreements made by GES, Freeman, and the MPEA violate the MPEA Act.  Defendants contend that the Court has no jurisdiction to hear these claims.  Initially, defendants argued that the Court lacked jurisdiction because there was no private right of action allowing plaintiffs to enforce the MPEA Act.  Plaintiffs, however, are not seeking to enforce the MPEA Act directly and made clear in their response that they do not contend a private right of action exists under the MPEA Act.  Instead, they seek to invalidate two contracts by arguing that they conflict with Illinois law.  Defendants now contend that the Court lacks jurisdiction to hear these declaratory judgment claims because the Declaratory Judgment Act does not provide jurisdiction and that plaintiffs lack standing.

As defendants contend, "the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction and requires an independent basis for jurisdiction."  *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 935 (7th Cir. 2008) (internal quotation marks omitted).  "[T]he availability of [a declaratory judgment claim] presupposes the existence of a judicially remediable right."  *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).  Plaintiffs' declaratory judgment actions cannot be brought under

section 301 of the LMRA, which provides jurisdiction only for "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The jurisdiction in section 301 does not extend to "suits that claim a contract is invalid," which is the sort of declaratory judgment that plaintiffs seek. *Textron Lycoming Reciprocating Engine Div. v. United Auto., Aerospace & Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 656–57 (1998) (claim that employer had fraudulently induced union to sign CBA could not be brought under LMRA).

The Court may, however, exercise supplemental jurisdiction over the declaratory judgment claims if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The declaratory judgment claims must "derive from a common nucleus of operative fact with the original federal claims." *Ho-Chunk Nation*, 512 F.3d at 936 (finding supplemental jurisdiction over a declaratory judgment claim). In this case, plaintiffs' federal breach of duty of fair representation and breach of CBA claims concern the union, GES, and Freeman agreeing to use a new process to obtain electricians that cost plaintiffs their jobs. The side letters challenged in the declaratory judgment claims are the method by which the defendants agreed to obtain electricians in a different way. Thus claims involving their validity under state law arise from the same nucleus of operative facts as the plaintiffs' federal claims.

This is particularly so in view of the fact that plaintiffs allege that at least one defendant, Freeman, told plaintiffs that its actions in laying off some of them were justified by the side letter it had entered into with the union. This makes it likely that Freeman, and perhaps GES as well, will use the side letters as a defense to plaintiffs'

claim that they breached the CBA.  Thus, the Court may have to address whether the side letters are invalid in order to determine whether plaintiffs' federal claims against Freeman and GES succeed.  *See Textron Lycoming*, 523 U.S. at 657–58 (noting that federal courts can address the validity of CBAs in the context of resolving a breach of CBA claim).

Plaintiffs also attack the utility service agreements between GES and Freeman and the MPEA.  Irrespective of whether the Court may exercise supplemental jurisdiction over these claims, plaintiffs lack standing to challenge the agreements under Illinois contract law.  "Under Illinois law, a cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, or by an intended third-party beneficiary."  *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602 (7th Cir. 2001) (citation omitted); *White Hen Pantry, Inc. v. Rak Woo Cha*, 214 Ill. App. 3d 627, 633–36, 574 N.E.2d 104, 107–09 (1991) (claimants could not challenge real estate contract as unenforceable because it was vague and missing material terms because they were not parties to the contract, even though they had a competing contract to purchase the same property); *see Interim Healthcare, Inc. v. Home Solutions Sys. Equity Corp.*, No. 98 C 7419, 1999 WL 286082, at *6 (N.D. Ill. Apr. 26, 1999) (applying *White Hen* to hold that plaintiff lacked standing to challenge contract to which it was not a party).  Plaintiffs can bring suit challenging the side letters because the union, acting as their agent, was a party to the letters or because union members were intended-third party beneficiaries of them, as is the case with the CBA itself.  Neither the union nor any of the plaintiffs, however, was a party to the utility service agreements.  Plaintiffs do not contend that they are in privity with any of the defendants who agreed to the utility

service agreements or that they were intended third-party beneficiaries of the agreements.

Accordingly, the Court dismisses plaintiffs' declaratory judgment claim that the utility service agreements are invalid, but declines to dismiss the declaratory judgment claim that the side letters are invalid on the grounds of jurisdiction or standing.

**E.     Sufficiency of the declaratory judgment claim**

The union contends that plaintiffs have not adequately alleged any violation of the MPEA Act in their declaratory judgment claim that the side letters entered into by the union, GES, and Freeman are illegal.  The union acknowledges that the MPEA Act prohibits the MPEA from being the "exclusive provider of electrical services" at McCormick Place.  70 ILCS 210/5.4(f)(2).  It contends, however, that the complaint makes clear that GES and Freeman are still providing such services at McCormick Place and are simply using workers borrowed from the MPEA to do so.  2d Am. Compl. ¶¶ 46, 59.  Plaintiffs' argument, however, is that the MPEA has effectively become the exclusive provider of electrical services at McCormick Place, in violation of the MPEA Act.  *Id.* ¶ 57.  The Court concludes that plaintiffs have stated a claim.

The Illinois legislature amended the MPEA Act because it was concerned that McCormick Place and Navy Pier were losing convention business due to their costs and labor rules.  70 ILCS 210/5.4(a)(9), (10) & (12)–(14).  The legislature was particularly concerned about how many conventions the MPEA's facilities hosted, because the State of Illinois has pledged its general funds to satisfy the MPEA's debts if the MPEA's revenue does not cover its debts.  *Id.* 210/5.4(a)(6)–(8).  The amended MPEA Act singles out electrical services for reform, stating that exhibitors have the "right" to use an

15

electrical contractor approved by the MPEA instead of the MPEA itself and that, if the MPEA provides electrical services, it cannot charge more than its own costs. *Id.* 210/5.4(c)(15). In addition, as discussed previously, the MPEA Act expressly states that the MPEA cannot be only provider of electrical services, so that even though the MPEA must approve electrical contractors for work at McCormick Place, it cannot deny approval to all contractors. *Id.* 210/5.4(f)(2).

Plaintiffs allege that defendants arranged the side letters and other contracts so that contractors like GES and Freeman would have to use MPEA electricians at McCormick Place, even though the MPEA is prohibited from being the only supplier of electrical services at McCormick Place. 2d Am. Compl. ¶¶ 51, 55–56. Plaintiffs also allege that these MPEA electricians were selected through an arbitrary process tainted by favoritism. *Id.* ¶¶ 35–38. Because one of the purposes of the MPEA Act amendments was to help exhibitors control costs and have options when purchasing electrical services at McCormick Place, plaintiffs have alleged a violation of the MPEA Act due to the way the side letters allegedly positioned the MPEA to be effectively the only provider of electrical services at McCormick Place.

For these reasons, the Court declines to dismiss plaintiffs' declaratory judgment claim that the side letters violate the MPEA Act.

### Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss in part and denies them in part [docket nos. 30, 39, 47, and 50]. Specifically, the Court dismisses plaintiffs' claims for tortious interference against the MPEA (Count 4) and for a declaratory judgment that the utility service agreements violate the MPEA Act (Count

5).  The Court otherwise denies the motions.  The case remains set for a status hearing

on September 26, 2012 at 9:30 a.m.

_____
                                            MATTHEW F. KENNELLY
                                            United States District Judge

Date:  September 4, 2012