**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JOSEPH HEALY, TOM O'DRISCOLL,** ) | |
| **ALAN PORTER, JAMES B. HOWLAND,** ) | |
| **KARL DIEDE, JIM TIMOTHY, and** ) | |
| **JOHN RYAN, on behalf of themselves** ) | |
| **and all others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 11 C 8892** |
| ) | |
| **INTERNATIONAL BROTHERHOOD OF** ) | |
| **ELECTRICAL WORKERS, LOCAL UNION** ) | |
| **NO. 134, FREEMAN ELECTRICAL, INC.,** ) | |
| **GLOBAL EXPERIENCE SPECIALISTS,** ) | |
| **INC., and METROPOLITAN PIER AND** ) | |
| **EXPOSITION AUTHORITY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Joseph Healey, Tom O'Driscoll, Alan Porter, James B. Howland, Karl

Diede, Jim Timothy, and John Ryan have sued International Brotherhood of Electrical

Workers, Local Union No. 134 (the union), Freeman Electrical, Inc., Global Experience

Specialists, Inc. (GES), and the Metropolitan Pier and Exposition Authority (MPEA).

They assert claims for breach of the union's collective bargaining agreement with

Freeman and GES and breach of the union's duty of fair representation. Plaintiffs also

seek a declaratory judgment that certain contracts are illegal under Illinois law.

Plaintiffs have moved pursuant to Federal Rule of Civil Procedure 23(b)(2) and

(b)(3) for certification of two classes. For the reasons stated below, the Court denies

plaintiffs' motion with regard to their proposed Rule 23(b)(2) class but grants the motion with regard to their proposed Rule 23(b)(3) class.

**Background**

MPEA, GES, and Freeman are all parties to a collective bargaining agreement that the union has with the Electrical Contractors' Association of the City of Chicago. The collective bargaining agreement provides a process by which electricians are referred to contractors for hire. The agreement provides that the union is the sole source of referrals to contractors and that "[t]he loaning and borrowing of journeymen between contractors shall not be tolerated." Pls.' Ex. E § 2.18.

In the referral system, electricians are placed into groups based on their experience and skills. Within each group, electricians get priority for referrals based upon when they signed up as available for work. Per the union's written referral hall procedures, a contractor can place two different types of calls for electricians on the union's "out-of-work lists": a "short call," for a position that will last less than two weeks, and a "long call," for a position that will last longer than two weeks.

MPEA is a local government entity that owns and operates Navy Pier and McCormick Place, a convention center. Prior to 2011, the union's referral hall allowed MPEA to place a third type of call not documented in the union's written referral procedures, referred to as a "McCormick Place call" or a "show call." Foley Dep. at 8. The length of the show call was generally defined by the length of the particular McCormick Place trade show. Over the years, however, McCormick Place began asking particular electricians with demonstrated trade show skills to remain on call beyond the length of their show calls. This group of electricians became known as the

2

"McCormick Place Pool" or "the pool."

In 2009, the sponsors of a number of conventions that previously had been held at McCormick Place announced that they would not return because union work rules, electrical services, and food service costs made it uneconomical for exhibitors to use the convention center.  In response, the Illinois legislature amended the Metropolitan Pier and Exposition Authority Act (MPEA Act) in 2010.  The amended MPEA Act provided that a convention had the right to choose an electrical contractor approved by MPEA and that MPEA "shall not serve as the exclusive provider of electrical services." 70 ILCS 210/5.4(c)(15) & (f)(2).

Pursuant to the amended MPEA Act, MPEA began to allow Freeman and GES to provide electrical services at McCormick Place.  Freeman and GES signed the collective bargaining agreement with the union, and in early 2011, they began winning contracts to provide electrical services at McCormick Place.

By the spring of 2011, Freeman and GES had provided electrical services for a number of large trade shows using electricians obtained from the union's short and long call lists.  Plaintiffs contend that MPEA struggled to compete with Freeman and GES for bids on contracts and thus approached the two contractors about entering into new agreements regarding their work at McCormick Place.  Ultimately, the union agreed to give Freeman and GES access to the McCormick Place Pool of electricians through a subcontracting arrangement with MPEA.  The union also indicated, however, that such an arrangement would be possible only if Freeman and GES concurrently entered into Interpretive Side Letters (ISLs).  These letters provided that neither Freeman nor GES could provide electrical work with its own employees at any location owned, operated,

or controlled by MPEA (i.e. at McCormick Place). Both Freeman and GES signed ISLs on June 29, 2011.

Plaintiffs in this case – Freeman and GES electricians on the long and short call lists – contend that as a result of defendants entering into the ISLs, Freeman and GES hired only McCormick Place Pool members to perform work at McCormick Place. Indeed, the record reflects that MPEA called the union referral hall only on occasions when a show required more electricians than were in the pool. The defendants' conduct, plaintiffs allege, resulted in a breach by Freeman and GES of the collective bargaining agreement's mandate against loaning and borrowing journeymen and a breach of the union's duty of fair representation vis-à-vis union members who were not in the McCormick Place Pool. Plaintiffs allege that due to the defendants' conduct, Freeman and GES laid off all of their electricians who had been doing work at McCormick Place between August 12, 2011 and the end of September 2011.

Around November 2011, the union, MPEA, Freeman, and GES determined that the ISLs were no longer necessary and that Freeman and GES could again place calls to the union's referral hall to obtain electricians for their shows. Shortly thereafter, the ISLs were rescinded. By December 2012, Freeman had ceased using McCormick Place Pool members, and it sent a letter to MPEA indicating that it no longer intended to use the pool. By the first quarter of 2013, the entire McCormick Place Pool was laid off.

## Discussion

A party seeking class certification bears the burden of showing that the conditions of Rule 23 are satisfied. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). First, the putative plaintiff must satisfy the four prerequisites of Rule 23(a):

the class is so numerous that joinder of all of the class members is impracticable (numerosity); there are questions of law or fact common to the proposed class (commonality); the class representative's claims are typical of the claims of the class (typicality); and the representative will fairly and adequately represent the interests of the class (adequacy of representation). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); Fed. R. Civ. P. 23(a)(1)-(4). Second, the moving party must demonstrate that the proposed class falls within one of the three categories in Rule 23(b), which are: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011); Fed. R. Civ. P. 23(b)(1)-(3). "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (internal quotation marks omitted).

Plaintiffs have moved to certify two classes. First, they request certification of a class under Rule 23(b)(2) consisting of "all Local 134 members who were on the 'out-of-work lists' at the Local 134 referral hall at any time between August 12, 2011 and the present." Pls.' Mot. to Certify Class at 3 (dkt. no. 94). Second, plaintiffs request certification of a class under Rule 23(b)(3) consisting of "all Local 134 members who were laid off by Freeman and GES between August 12, 2011 and the end of September 2011." *Id.*

## 1.      Rule 23(b)(2) class

Rule 23(b)(2) provides that class certification is available if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  A request for such injunctive relief, however, is rendered moot when "there is no reasonable expectation that the wrong will be repeated."  *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 747 (7th Cir. 1999) (internal quotation marks omitted).  "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility."  *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (internal quotation marks omitted).

In this case, plaintiffs concede that defendants rescinded the ISLs, stopped using the McCormick Place Pool, and have laid off all of the electricians in that pool.  The record further shows that Freeman and GES are currently providing electrical services at trade shows using electricians obtained through the union's referral hall.  Thus the practice that plaintiffs challenge was discontinued, and the pool in question no longer exists.  Plaintiffs nevertheless contend that their request for injunctive relief is not moot because "[d]efendants still defend the legality of the ISLs."  Pls.' Reply Br. at 12.  The fact that defendants are defending this suit, however, does not suggest that they intend to revive the ISLs.  The contention that defendants would do so is entirely speculative, which is insufficient to defeat defendants' argument that the claim for injunctive relief is moot.  *Nelson*, 570 F.3d at 882 (the fact that it is "theoretically possible" that the defendant will resume the allegedly unlawful conduct after the litigation concludes does

not defeat mootness where that possibility is based on "speculation and not evidence."). Because there is no reasonable expectation that defendants' alleged illegal practices are likely to recur, there is no basis to certify plaintiffs' proposed Rule 23(b)(2) class.

## 2.    Rule 23(b)(3) class

A proposed class satisfies Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Defendants contend that plaintiffs have not satisfied any of the prerequisites of Rule 23(a) or the predominance and superiority requirements of Rule 23(b)(3).  The Court addresses each argument in turn.

### a.    Commonality and typicality

Defendants contend that plaintiffs have failed to show that there are questions of law or fact common to the class.  *See* Fed. R. Civ. P. 23(a)(2).  Relying on the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), the Seventh Circuit has explained that in order to show commonality, a plaintiff must demonstrate that the class members all "suffered the same injury."  *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (citing *Wal-Mart Stores,* 131 S. Ct. at 2551); *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 896 (7th Cir. 2012).  "[S]uperficial common questions – like whether . . . each class member suffered a violation of the same provision of law – are not enough."  *Id.* (internal quotation marks omitted).  Rather, class claims must depend on a common contention that is capable of classwide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke."  *Wal-Mart Stores*, 131 S. Ct. at 2551.

The evidence presented to the Court indicates that defendants engaged in a standardized course of conduct pursuant to the ISLs, borrowing electricians from the McCormick Place Pool rather than obtaining them through the union referral hall, and that this conduct resulted in laying off all members of the proposed class.  The legality of this practice, which is central to the validity of each of the class members' claims, can in fact be resolved "in one stroke."  This distinguishes the case from *Wal-Mart Stores*, where the Supreme Court found that the proposed class lacked commonality.  *Wal-Mart Stores* concerned employment decisions made by local supervisors who were given discretion to evaluate employees.  As the Supreme Court noted, this was "just the opposite of a uniform employment practice."  *Id.* at 2554.  Here, by contrast, the ISLs required (or enabled) defendants to engage in a single allegedly unlawful practice – hiring only McCormick Place Pool members.  The legality of this alleged practice is a key outcome-determinative issue.  Unlike in, for example, *Wal-Mart Stores* and *Bolden*, the challenged policy or practice is reasonably concrete and liability-determinative on its own terms, without the need to delve into how it was used or applied to individual workers.  In addition, the members of the proposed class have all suffered the same injury, specifically, the denial of work at McCormick Place because they were not part of the McCormick Place Pool.  For these reasons, plaintiffs have met the commonality requirement.

Defendants nevertheless argue that commonality is lacking because (1) Freeman had plans to lay off a portion of its employees irrespective of whether it signed ISLs; and (2) the proposed class members who were longstanding pool members could not have

suffered an injury from an alleged breach of the union's duty of fair representation because they were aware of and benefitted from the system they now contend was improper.  The Court disagrees.  With respect to defendants' first argument, Freeman's director of electrical services admitted in his deposition that entering into the ISLs required Freeman to lay off its employees.  Felton Dep. at 65, 81.  The evidence before the Court thus indicates that the employees who supposedly would have been laid off anyway did suffer the same harm as the rest of the class because of defendants' use of the pool pursuant to the ISLs.  With respect to defendants' second argument, defendants say that class representatives O'Driscoll, Howland, and Timothy were all pool members for varying periods of time between 1987 and 2009 and thus could not have suffered from the union's alleged breach of its duty of fair representation.  But these three plaintiffs were only McCormick Place Pool members prior to the legislature's amendment of the MPEA Act in 2010.  And the claims of the proposed class are based on a practice and injuries that allegedly occurred only after the legislature amended the MPEA Act that year.  Thus whether particular class representatives may have benefitted from the use of the pool in earlier years would appear to be immaterial.

Defendants also argue that plaintiffs have not established typicality.  The typicality requirement focuses on "'whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'"  *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citing *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).  The proposed class representatives' claims meet this requirement if they "arise[ ] from the same event or practice or course of conduct that gives rise the claims of the other class members and . . . [are] based on

9

the same legal theory." *Id.* (internal quotation marks and brackets omitted).

Defendants advance the same argument regarding typicality as they do regarding commonality. As discussed above, however, plaintiffs have provided evidence of uniform conduct pursuant to the ISLs that caused all of the proposed class members' injuries. Freeman admitted that it laid off electricians because it entered into ISLs, and O'Driscoll, Howland, and Timothy's claims, like those of the proposed class, all concern defendants' conduct that occurred after the MPEA Act was amended. The Court therefore finds that the proposed class satisfies the typicality requirement as well.

### b. Numerosity

Defendants also contend that plaintiffs have not met the numerosity requirement of Rule 23(a)(1) with respect to plaintiffs' putative (b)(3) class. As indicated above, Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no bright-line test for numerosity, but courts have found that a class of forty is, or at least can be, sufficiently large to satisfy Rule 23(a)(1). *See Pruitt v. City of Chicago*, 472 F.3d 925, 926-27 (7th Cir. 2006) ("Sometimes even 40 plaintiffs would be unmanageable."); *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 897 (7th Cir. 1999) (noting that class consisted of class representative "and 35 other[s]"); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (even forty members could be sufficiently large to satisfy numerosity); *Hinman v. M and M Rental Cent., Inc.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008) ("[A] class of forty is generally sufficient to satisfy Rule 23(a)(1)."). In addition to considering the size of the proposed class, courts take into account other factors in determining whether joinder is impracticable. These factors

include judicial economy, the ability of class members to initiate individual suits, geographic dispersion of the putative class, and the practicability of relitigating a common core of issues. *See, e.g., Sorensen v. CHT Corp.*, Nos. 03 C 1609 & 03 C 7362, 2004 WL 442638, at *8 (N.D. Ill. Mar. 10, 2004).

The putative Rule 23(b)(3) class in plaintiffs' case consists of at least forty members.[1] As discussed above, this number is sufficiently large to satisfy the numerosity requirement. *See* 1 William B. Rubenstein & Alba Conte, Newberg on Class Actions § 3.15 at 3-25 (5th ed. 2013) (suggesting that any class consisting of more than forty members "raises a presumption of impracticability of joinder based on numbers alone").

Defendants contend, however, that joinder is not impracticable because plaintiffs have already identified the proposed class members, and members have organized a formal group (called Fair Play at MPEA) designed to remedy the alleged harms described in plaintiffs' complaint. Although the proposed class is not geographically dispersed and at least some proposed class members may well be identifiable through their membership in Fair Play at MPEA, the size of the class, the interest of judicial economy, and the impracticability of relitigating the same issues weigh heavily in favor of class certification. All of the proposed class members in this case lost their job within the same, relatively compact time frame, due to the same alleged conduct by the defendants. To determine liability for forty for more individuals on a person-by-person basis when the underlying facts and issues are essentially the same would be an

---

[1] The Court rejects defendants' contention that it should view Freeman and GES workers as two separate classes. Defendants have offered no basis to believe that their liability would turn on their individual circumstances or on when each entered into its particular ISL and began the challenged practice. Timing may affect damages, but defendants have not tried to explain how it would affect liability.

ineffective use of judicial resources, as well as highly impracticable.  As such, the Court

finds that plaintiffs have met the numerosity requirement.

### c.      Adequacy of representation

Rule 23(a)(4) requires that the named plaintiffs fairly and adequately represent

the class as a whole.  Fed. R. Civ. P. 23(a)(4).  To evaluate whether plaintiffs have

fulfilled this criterion, the Court looks at both "the adequacy of the named plaintiffs as

representatives of the proposed class's myriad members, with their differing and

separate interests, and . . . the adequacy of the proposed class counsel."  *Gomez v. St.*

*Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).  "A class is not fairly and

adequately represented if class members have antagonistic or conflicting claims."

*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Defendants do not dispute plaintiffs' contention that their lawyers are adequate to

serve as class counsel.  Plaintiffs' attorneys have substantial class action experience

and have obtained multi-million dollar recoveries for classes they have represented.

The Court has no doubt that plaintiffs' attorneys will be able to litigate the case fairly and

adequately on behalf of the proposed class.

Defendants do dispute, however, that Timothy, Howland, and O'Driscoll (three of

the seven proposed class representatives) are adequate class representatives.  First,

defendants argue that all three of these plaintiffs are former pool members and that this

places them at odds with the unnamed class members who were not pool members.

But, as discussed earlier, Timothy, Howland, and O'Driscoll were not members of the

McCormick Place Pool during the relevant period, namely, after the MPEA Act was

amended and the ISLs were implemented.  There is, in fact, no conflict along the lines

defendants claim.

Defendants also contend that O'Driscoll failed to mitigate his alleged damages after being laid off from Freeman in August 2011 and is therefore "antagonistic as a representative." Defs.' Resp. Br. at 21. The Seventh Circuit has stated that a plaintiff may be an inadequate class representative if he is subject to a defense not applicable to the class as a whole. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011).

O'Driscoll testified during his deposition that after he was laid off, he passed up short calls because his dues were delinquent; he missed calls because he "wasn't paying attention"; and he did not need to look for work because he was living with relatives rent-free. O'Driscoll Dep. at 54-56. O'Driscoll's alleged failure to mitigate is not a defense to liability, but it could affect the amount of damages he would recover. Because the Court is certifying a liability-and-damages class, and because there are other available class representatives, out of an abundance of caution the Court concludes that O'Driscoll is a less-than-adequate class representative and thus will not accord him representative status. No similar concerns or individualized issues have been asserted, however, regarding the other proposed class representatives, and the Court finds that all of them meet the adequacy of representation standard.

### d. Rule 23(b)(3)

To certify a Rule 23(b)(3) class, a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" Fed. R. Civ. P. 23(b)(3). The following factors

are relevant in making these determinations: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

### i. Predominance

Rule 23(b)(3)'s predominance criterion is more demanding than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). The issue for Rule 23(b)(3) purposes is not whether there are individual issues – there are some individual issues in virtually every situation in which class certification is sought – but rather whether common issues predominate over any individual issues. In particular, the need for individual damages determinations does not, by itself, defeat class certification under Rule 23(b)(3). *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008); *see also* 2 William B. Rubenstein & Alba Conte, Newberg on Class Actions § 4.54 (5th ed. 2013) ("Courts in every circuit have therefore uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations.").

Defendants contend that the "test for predominance dramatically changed" with the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), and that as a result, the common questions in this case do not predominate due to variations in damages among class members. In the Court's view, however, *Comcast* does not come close to saying, as defendants suggest, that a class cannot be certified

whenever there are variations among class members' damages.

The district court in *Comcast* certified a liability-and-damages class composed of more than two million current and former Comcast subscribers who sought damages for alleged violations of federal antitrust laws. *Comcast*, 133 S. Ct. at 1429-31. The plaintiffs proposed four different theories of antitrust impact (and thus damages), but the district court ruled that only one could be proven in a manner common to all class members. *Id.* at 1430-31. The plaintiffs' expert, however, had calculated damages for the class using a model that encompassed all four theories and did not isolate the damages resulting from the single theory of antitrust impact that the district court had found appropriate. In short, there turned out to be no evidence regarding how damages actually would be calculated given the court's ruling, and thus no assurance that damages could be measured without complicated individual calculations for each of the two million-plus class members. Despite this, the district court certified a class, and the Third Circuit affirmed.

The Supreme Court reversed, in a decision that it described as turning "on the straightforward application of class-certification principles." *Id.* at 1433. The Court noted that the plaintiffs relied on a damages model that "did not isolate damages resulting from any one theory of antitrust impact." *Id.* at 1431. Because the plaintiffs would be entitled to damages resulting only from the liability theory the district court had found legally permissible, however, the Court said that any model supporting plaintiffs' damage case "must be consistent with its liability case." *Id.* at 1433 (internal quotation marks omitted). The Court also rejected plaintiffs' "assurance[s]" that complicated individual calculations would not be required. In this regard, the Court provided an

illustration of how damages might differ among class members and noted that "[t]he permutations involving four theories of liability and 2 million subscribers located in 16 counties are nearly endless." *Id.* at 1434-35. For this reason, and due to plaintiffs' failure to offer a damages model that matched the theory of liability on which they would be proceeding, the Court said that "Rule 23(b)(3) cannot authorize treating subscribers . . . as members of a single class." *Id.* at 1435. In a footnote, the Court added that even if plaintiffs' expert's damage model had been confined to the single authorized theory of antitrust impact, "it still would not have established the requisite commonality of damages" unless it plausibly showed that the impact would have been the same from county to county or that any county-to-county differences would be irrelevant to the amount of overcharging (i.e. damages). *Id.* at 1435 n.6.

Defendants appear to read *Comcast* to say that a Rule 23(b)(3) class can be certified only if damages can be determined according to a single formula. One searches in vain, however, for any such statement or suggestion in the Supreme Court's decision. Nor does the Court understand *Comcast* to mean that a Rule 23(b)(3) class is inappropriate whenever damages may differ among class members. When the Supreme Court said that the plaintiffs in *Comcast* had failed to show that damages were "capable of measurement on a classwide basis" and that as a result, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class," *id.* at 1433, the Court was making a Rule 23(b)(3) predominance determination in a case involving a two million member class. The question of whether individual damages issue predominate over other common issues is necessarily dependent on (perhaps among other things) the size of the class and the nature of the damage

16

calculation.

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364 (7th Cir. 2012), which defendants cite on the predominance issue, involved a Rule 23(b)(2) class, not a Rule 23(b)(3) class. The Seventh Circuit's statement in that case that the district court properly could award damages only if "the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program," *id.* at 372, concerned only whether "incidental" damages properly could be awarded in a Rule 23(b)(2) class action, not Rule 23(b)(3). *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), also cited by defendants, somewhat loosely quoted *Johnson* in the context of a Rule 23(b)(3) class certification issue, but it did so in a context involving whether the need for "2341 separate evidentiary hearings" on damages meant that individual issues predominated over common issues, which they obviously did in that context. Neither case stands for the proposition that certification of a Rule 23(b)(3) liability-and-damages class is *per se* inappropriate unless damages will be calculated pursuant to a "mechanical formula." Though the same question – whether common issues predominate over individual issues – must be asked in every case, the answer can and will differ from case to case.

In the present case, it is unlikely that damages can be determined on an overarching, class-wide basis or based on a single formula. Though it is true, as plaintiffs contend, that "[a]ll class members work for standard wages regulated by collective bargaining agreements, and their hours are tracked by their union," Pls.' Reply Br. at 10, that does not mean that calculation of class members' damages will be mechanical. A particular class member's damages likely will be based on how much

work he lost as a result of defendants' conduct, and the odds are that this will differ from class member to class member. In addition, as plaintiffs effectively concede, some plaintiffs' damages (like O'Driscoll's) will vary based on whether they did or did not mitigate their damages.

As the Court has stated, however, the question is not whether there are individual issues; it is whether such issues predominate over common issues. The proposed class in this case is not a two million member class as in *Comcast*, or anything close to it. Rather, it is a class with around forty members. That fact has a significant bearing on the predominance issue. With this in mind, and because some damages-related issues are in fact common (e.g., the wage rate), it defies credulity to contend, as defendants do, that calculation of individual damages will predominate over the common issues concerning liability. Rather, the opposite is true. In this particular case, the common issues concerning liability significantly predominate over any individual damages issues. The Court finds that plaintiffs have met the predominance requirement of Rule 23(b)(3).

The Court notes that were it to have concluded otherwise, it would not have denied class certification altogether. Rather, the Court would have certified a liability-only class, as Rule 23 expressly permits. Specifically, Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." *See also, e.g., Comcast*, 133 S. Ct. at 1437 n. * (Ginsburg, J. and Breyer, J., dissenting) ("A class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings."); *see also Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, No. 1203176, 2013

WL 3389469, at *6 (10th Cir. July 9, 2013) (noting that after *Comcast*, class certification under Rule 23(c)(4) remains one way "to preserve the class action model in the face of individualized damages").  The Seventh Circuit's decision in *Arreola* supports this approach.  *Arreola*, 546 F.3d at 800-01.  In that case, this Court had expressed skepticism about the plaintiff's ability to satisfy the predominance requirement for certifying a 23(b)(3) class in a case involving damages yet had not made a definitive decision granting or denying certification of such a class.  As a result, the Seventh Circuit was unable to assess whether the plaintiff's case was suitable for (b)(3) class treatment.  Nevertheless, in remanding the case, the Seventh Circuit explained that district judges can devise alternative solutions to deal with varying damages among class members so long as substantial common issues predominate.  *Id.* at 800-01.  The court highlighted Rule 23(c)(1)(B), which authorizes the class treatment of "claims" as well as "issues."  *Id.* at 800.  It concluded that the need for individual damages determinations would not by itself require denial of class certification.  *Id.* at 801.  The Seventh Circuit's treatment of this issue is consistent with decision in other cases in which the court has repeatedly opined that the need to determine individual issues of damages does not detract from the efficiency of conducting a class trial on common issues key to resolving the case.  *See, e.g., Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("A district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments"); *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661, 663 (7th Cir. 2004).  *See also Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("The

possibility that individual hearings will be required for some plaintiffs to establish damages does not preclude certification.").  In short, were the Court to decline to certify a liability-and-damages class, it would still certify a class, but for liability purposes only.

### ii.  Superiority

The Court finds a class action is superior to other methods of adjudicating the proposed Rule 23(b)(3) class members' claims.  There does not appear to be any conflicting interest in controlling the litigation on the part of other members in the class, and the Court is aware of no other litigation that has already been commenced regarding this controversy.  Moreover, given the number of plaintiffs in this suit and the similarity of their claims, disposition by way of a class action represents an efficient use of judicial resources.  *See Hinman*, 545 F. Supp. 2d at 807.  Although there will be individualized damages issues, there is no reason to believe, based on the record presented to the Court, that determination of these issues will require much, if any, heavy lifting.   Rather, it is much more likely that if the case reaches that point, determination of damages will become a relatively simple task that can be dealt with via a special master, or even by mediation.  For these reasons, the Court finds that plaintiffs have satisfied the superiority requirement of Rule 23(b)(3).

### Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion for class certification in part and denies it in part [docket no. 77].  The Court declines to certify a Rule 23(b)(2) class.  The Court certifies, pursuant to Rule 23(b)(3), a class consisting of all Local 134 members who were laid off by Freeman and GES between August 12, 2011 and the end of September 2011.  The current named plaintiffs other than Tom O'Driscoll are

appointed as class representatives, and plaintiffs' current counsel are appointed as class counsel. The case is set for a status hearing on September 4, 2013, at 9:30 a.m. The parties are directed to meet and confer to attempt to agree upon a proposed class notice. Any proposed draft notices are to be submitted to the Court by no later than August 31, 2013.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 22, 2013